# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 17 CR 297 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| BEENA PATEL | ) | |

## OPINION AND ORDER

As part of an ongoing investigation into allegations of job and promotion buying in the office of the Clerk of Cook County Circuit Court (the "Clerk's Office"), the Government obtained a search warrant (the "Search Warrant") to search Defendant Beena Patel's ("Beena") cell phone. Beena now moves to quash the Search Warrant and to suppress the fruits of the search of her cell phone arguing that the Search Warrant was not supported by probable cause and that it was so deficient that the good-faith exception in *United States v. Leon*, 468 U.S. 897, 919–23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) cannot save it. Because the affidavit established probable cause to believe that Beena's cell phone contained evidence of a crime, specifically evidence of perjury and job and promotion buying, the Court denies the motion to quash the search warrant. Additionally, the Court finds that even if the affidavit were deficient, law enforcement's good-faith reliance on the warrant was reasonable, and thus the *Leon* exception to the suppression rule also applies.

Separately, Beena asks to Court to order the Government to turn over "any and all representations that the Government made to the grand jury concerning materiality" of her alleged false statements to the grand jury. Doc. 28 at 2. Because grand jury testimony is secret and Beena has not shown any particularized need for the requested statements, the Court denies her motion for these statements.

# BACKGROUND

On October 2, 2015, law enforcement obtained a Search Warrant to search Beena's cell phone. In support of its application for the Search Warrant, the Government provided an affidavit from FBI Special Agent Mary Harris. The affidavit described in great detail an alleged scheme in which individuals are buying positions and promotions within the Clerk's Office. Beena testified before the grand jury about this scheme on at least two occasions: October 15, 2015, and July 14, 2016. After the issuance of the Search Warrant, the Government searched Beena's phone and discovered evidence that now forms the basis of the present case. On May 4, 2017, a grand jury indicted Beena on three counts of lying during grand jury testimony in violation of 18 U.S.C. § 1623(a).

# LEGAL STANDARD

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015) (quoting *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003)). An affidavit is sufficient to establish probable cause if, based on the totality of the circumstances, it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *Id.*

# ANALYSIS

## I. SEARCH WARRANT

Beena argues that the affidavit in support of the application for a search warrant of her cell phone did not establish probable cause. "A search warrant affidavit establishes probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Gregory*, 795 F.3d 735, 741

(7th Cir. 2015) (citation omitted). "In deciding whether a search warrant is supported by probable cause, courts must use the flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)." *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990) (overruled on other grounds). The search warrant here sought to search Beena's phone for evidence of perjury by Sivasubramani Rajaram and job or promotion buying in the Clerk's Office.

### A. The Affidavit

Agent Harris submitted a 38-page affidavit (the "Affidavit") in support of her application for a search warrant for Beena's phone. At that time, Agent Harris was a six-year veteran of the FBI. Her work includes investigations of public corruption offenses.

The Affidavit goes into detail about various suspicious financial transactions involving employees of the Clerk's Office, the Clerk, the Clerk's campaign, and a company owned by the Clerk's husband ("Company 1"). In particular, the Affidavit alleges that Rajaram made two loans to Company 1 and that, within weeks of making these loans, the Clerk's Office hired him. The Affidavit asserts that Rajaram made these loans through Beena's brother,[1] Narendra Patel. Concurrently with making these loans and his hiring, Rajaram was in direct, regular telephone contact with the Clerk herself. During his grand jury testimony, Rajaram testified that he had no telephone contact with the Clerk. Around the same time, Rajaram was also in frequent telephone contact with Beena. However, Rajaram also denied telephone contact with Beena during his grand jury testimony.

---

[1] The Affidavit and Beena's Motion to Quash refer to Narendra Patel as Beena's now-deceased brother. However, the Government's response states that there is some confusion on this point and he may in fact have been her cousin. For purposes of this motion the Court assumes he was her brother, but it makes little if any difference if he was, in fact, her cousin.

Also during his grand jury testimony, Rajaram was asked to whom he spoke about his application to work in the Clerk's Office. In response, Rajaram took out his phone and looked through his contacts. He only identified one person, by her first name only. He did not identify the Clerk or Beena. However, as noted above, phone records indicate he was in regular contact with both at this time.

The Affidavit goes on to provide detailed allegations from multiple sources, including current and former employees of the Clerk's Office, about job and promotion buying in the Clerk's Office. One former employee, identified as Individual A, stated that she resigned from the Clerk's Office because she believed that she was expected to make monetary contributions to the Clerk as part of her employment and that the Clerk personally hired all 2,300 employees of the Clerk's Office. Individual A also stated that employees who received promotions either contributed money to the Clerk's campaigns or were otherwise close to the Clerk. Individual A also stated that it was common knowledge that Beena paid for the Clerk to take a trip to India. The Affidavit states that another Clerk's Office employee, identified as Individual M, reported that another Clerk's Office employee, identified as Individual N, explained to her that she paid money to obtain her job in the Clerk's Office and that other employees had done the same. Individual N told Individual M that people seeking employment make payments to Employee One, a Clerk's Office employee, and the Clerk periodically goes to Employee One's home to collect the payments.

The Affidavit states that according to bank records, Employee One and his wife made two payments by check to the Clerk, and the Clerk transferred this money to her campaign as loans. The first check was for $20,000 and the second check was for $10,000. The first of these checks was very close in time to when the Clerk's Office hired Employee One's brother-in-law

4

and sister-in-law. Furthermore, the brother-in-law and sister-in-law wrote checks to Employee One and his wife around this same time. Additionally, the Clerk subsequently withdrew these same funds from her campaign account as repayment to herself for these loans. There is no evidence that she repaid this money to Employee One or his wife until after law enforcement began approaching Clerk's Office employees.

The Affidavit goes on to list other payments to Employee One from Clerk's Office employees or their relatives obtained from bank records that are consistent with the scheme described above. In many instances the individuals who made the payments denied knowing Employee One. The Government ultimately granted immunity to individuals to testify before the grand jury. However, when testifying, they provided testimony inconsistent with the bank records in possession of the Government.

Eventually law enforcement attempted to interview Employee One at his home, but was unsuccessful. Immediately after agents left Employee One's home, he called the Clerk and two Clerk's Office employees who were also subjects of the investigation. His conversation with the Clerk lasted approximately 5 minutes. Around this time and continuing until late-2015, Beena and Employee One also exchaged numerous text messages and telephone calls.

Finally, the Affidavit details several transactions between Narendra Patel and the Clerk, the Clerk's husband, and the Clerk's campaign. Specifically, the Affidavit notes that Narendra Patel quit claimed a parcel of land to the Clerk's husband for $1 and the Clerk and her Husband subsequently sold this property to a developer for $100,000. The Affidavit also states that Narendra Patel and a company he owed donated approximately $86,000 to the Clerk's campaign.

### B. Probable Cause to Search Beena's Phone for Evidence of Perjury

There was undoubtedly probable cause to search Beena's phone for evidence of Rajaram's perjury. Law enforcement does not need to support a search warrant with probable cause that the search will unearth evidence of the target's wrongdoing; the search warrant only needs to set forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime. *McMillian*, 786 F.3d at 639. Prior to law enforcement obtaining the Search Warrant for Beena's phone, Rajaram testified under oath to a grand jury that after he returned to the United States on August 10, 2014, he did not have any telephone communications with Beena. However, according Rajaram's phone records, which the Government obtained pursuant to a subpoena from his mobile carriers, a telephone registered to Rajaram at his home address frequently contacted a phone registered to Beena between August 10, 2014, and June 22, 2015. These records amply support a reasonable belief that Beena's phone would contain evidence that she and Rajaram communicated by phone after August 10, 2014, despite his sworn testimony to the contrary.

### C. Probable Cause to Search Beena's Phone for Evidence of Job and Promotion Buying

As to evidence of the job and promotion buying scheme, it is a closer case. The Affidavit does not contain any direct allegation of Beena's involvement in the job and promotion buying scheme. However, looking at the totality of the circumstances, a reasonable person could conclude that Beena's frequent phone contacts with Rajaram and the Clerk relate to the job buying scheme, particularly in light of the fact that Rajaram allegedly lied under oath about his telephone contacts with Beena during the period in which he is alleged to have purchased his position in the Clerk's Office. Additionally, while thinly sourced, the affidavit states that it was "common knowledge around the Clerk's Office that employee Beena Patel paid for a trip that

[the Clerk] took to India." Doc. 26-1 ¶ 8. This allegation is consistent with the alleged culture of providing improper benefits to the Clerk and places Beena squarely inside the group of people engaging in and aware of such behavior.

The Affidavit also notes that during the same time period Rajaram lied about having telephone contacts with Beena, Beena had substantial telephone contacts with Employee One. Employee One's actions are at the heart of the alleged scheme. Beena argues that because she and Employee One are coworkers, these telephone contacts are not grounds for suspicion. However, the mere existence of an innocent explanation consistent with the facts does not negate probable cause. *See United States v. Hanhardt*, 157 F. Supp. 2d 978, 994 (N.D. Ill. 2001) ("The fact that there may have been an innocent explanation for some of the calls between the targeted phone number and phone numbers assigned to persons engaged in organized crime does not materially detract from the totality of probable cause found in the affidavit."). Viewed in light of the totality of the circumstances, these contacts support a finding of probable cause.

Finally, the Affidavit includes several allegations about questionable payments and transactions between Beena's brother and the Clerk, including quit claiming a property to the Clerk and her husband for $1 that the Clerk sold shortly thereafter for $100,000, donating approximately $86,000 to the Clerk's campaign, and coordinating suspicious loans to the Clerk's campaign and her husband's business.

That Rajaram attempted to conceal his telephone contacts with Beena supports an inference that those contacts were in some way related to criminal activity, particularly to the criminal activity under investigation by the grand jury: job and promotion buying. *See*, *e.g.*, *United States v. $215,300 U.S. Currency*, 882 F.2d 417, 419 (9th Cir. 1989) (lying about and attempting to conceal money supports an inference that the money was drug-related); *see also*

7

*United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1217 (9th Cir. 2001) (inconsistent statements support a finding of probable cause). The Government also cites to *District of Columbia v. Wesby*, --- U.S. ----, 138 S. Ct. 577, 587–88, 199 L. Ed. 2d 453 (2018), in which the Supreme Court found that the deceptive words and actions of party-goers when the police arrived supported a finding of probable cause to arrest them because it was suggestive of wrongdoing. This case, and the others cited above, illustrate that a reasonable person can infer from intentionally deceptive behavior that the person being deceptive is doing so to cover up some other illicit activity.

With respect to the allegations regarding the job and promotion buying scheme, the role of Beena's brother in that scheme and other potentially related and suspicious transactions and the allegation that Beena had paid for the Clerk's trip to India, when taken together describe a corrupt environment in which Beena was steeped and in which she plausibly played an active role. Each of these allegations standing alone is not enough to establish probable cause to search Beena's phone for evidence of the job and promotion buying scheme, but taken all together and drawing reasonable inferences from that totality, they are sufficient. *United States v. Mykytiuk*, 402 F.3d 773, 778 (7th Cir. 2005) ("A judge may draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense."). The magistrate judge in this case reasonably concluded that there was sufficient evidence to believe Beena's phone would contain evidence of the scheme, and therefore, the warrant was proper.

In addition to arguing that the allegations do not provide enough evidence to support probable cause, Beena also argues that the Affidavit lacks any discussion of the witnesses' reliability. In assessing informant reliability the Seventh Circuit suggests that a court consider

four factors: (1) firsthand observation by the informant, (2) the degree of detail provided by the informant, (3) corroboration of the informant's information by the police, and (4) testimony by the informant at a probable cause hearing. *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008). Here, the witnesses provided specific information about individuals who made payments for jobs and promotions, sometimes providing specific amounts for the payments. Some witnesses provided first-hand accounts of making payments to the Clerk's campaign, Narendra Patel, and Employee One. Second-hand witnesses also stated that many of the payments for jobs and promotions were funneled through Employee One to the Clerk; the structure of suspect payments flowing from Employee One to the Clerk is independently corroborated by bank statements the FBI obtained. The fact that numerous witnesses described a similar scheme and payment structure, and that much of the information was corroborated through independent bank records adequately supports a finding of reliability. This reliability is not destroyed simply because the witnesses have not been previously used as informants.

## II. GOOD FAITH EXCEPTION

Even if the affidavit failed to establish probable cause to search Beena's phone, the evidence law enforcement obtained through the search is still admissible under the "good faith" exception to the exclusionary rule. "In *Leon*, the Supreme Court held that suppression of evidence seized pursuant to a search warrant that is later declared invalid is inappropriate if the officers who executed the warrant relied in good faith on issuing judge's finding of probable cause." *United States v. Watts*, 535 F.3d 650, 656–57 (7th Cir. 2008). Obtaining a warrant before conducting a search is prima facie evidence of good faith. *Id.* But the defendant can rebut that presumption by showing that the supporting affidavit was so deficient that no reasonable officer could have relied upon it. *Id.* Courts will exclude evidence obtained pursuant

9

to a subsequently invalidated search warrant only if "(1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *United States v. Harju*, 466 F.3d 602, 607 (7th Cir. 2006) (citation omitted) (internal quotation marks omitted).

Beena does not argue that a materially similar affidavit previously failed to establish probable cause and limits her argument to the second prong: the affidavit was so plainly deficient that the officer could not have reasonably relied upon it. As noted above, the probable cause to search Beena's phone for evidence related to the scheme to purchase jobs and promotions is weak, but the facts taken all together establish probable cause and the resulting affidavit was not so unreasonably deficient that the officer could not have relied upon it. The allegations that Beena paid for the Clerk's trip to India and contributed over $2,000 to the Clerk's campaign, coupled with the well-developed allegations of rampant job and promotion buying in the Clerk's Office, support a reasonable probability that Beena knew of or was involved in the alleged scheme. Additionally, Rajaram's decision to lie about his contacts with Beena in the context of the investigation into the job and promotion buying scheme is indicative of his desire to cover up discussions about that scheme. Finally, the alleged active role her brother played in the scheme further supports a reasonable inference that she was involved and her phone likely contains evidence of the scheme. Altogether, this not only fails to rebut the presumption of good faith, but supports it.

**III.    Motion for Statements to the Grand Jury**

Beena moves to compel the Government to hand over "any and all representations that the Government made to the grand jury concerning materiality" of her alleged false statements to the grand jury. Doc. 28 at 2. In response to this request, the Government provided the Court with the prosecutor's colloquy with the grand jury regarding the charges against Beena for *in camera* review.

Grand jury materials are presumptively secret and are not subject to disclosure absent a showing of particuliarized need on the part of the defendant. *See* Fed. R. Crim. P. 6(e); *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978). To obtain grand jury materials defendant must show that the information "is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [the] request is structured to cover only material so needed." *United States v. Campbell*, 324 F.3d 497, 499 (7th Cir. 2003) (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S. Ct. 1667, 60 L.Ed.2d 156 (1979)).

Beena argues that because the statute itself under which she is charged, 18 U.S.C. § 1623, makes materiality an element of her crime, she needs to have access to everything the Government said about materiality to the Grand Jury to adequately prepare her defense. To prove materiality, the Government will need to establish a nexus between the grand jury investigation during which the alleged misstatements were made and the misstatements themselves. *United States v. McComb*, 744 F.2d 555, 564 (7th Cir. 1984). To do so, the Government will be required to present evidence on the scope of that grand jury investigation. *Id.* The Government has already produced transcripts from the grand jury of all witnesses it intends to call as well as witnesses that may be helpful to Beena. Many of these transcripts,

including the transcript of Beena's testimony, include a statement of the scope of the grand jury investigation with which she is alleged to have interfered. Statements the Government made during its colloquy with the grand jury before it indicted Beena for her misstatements are not evidence in this case as they are simply arguments that, given the scope of the investigation and the alleged misstatements, there is probable cause to find that those misstatements were material to the investigation. Beena does not point to any case in which a court ordered the Government to produce transcripts of non-testimonial portions of grand jury proceedings. In the cases she cites, the courts ordered the Government to provide the testimony of witnesses it intended to call, something it has already done in this case. *See United States v. Duffy*, 54 F.R.D. 549, 550–51 (N.D. Ill. 1972).

In this case, Beena has access to all of the evidence the Government has regarding the misstatements and the scope of the grand jury investigation. Denying Beena access to these additional statements will not cause an injustice because the information will not provide her with anything beyond the evidence to which she already has access. Therefore, the Court denies Beena's motion to compel production of these portions of the grand jury proceedings.

## CONCLUSION

For the foregoing reasons, the Court denies the motion to quash the search warrant and suppress the fruit of that search [26]. The Court also denies the motion to compel production of statements to the grand jury regarding materiality [28].

Dated: July 31, 2018

_____
SARA L. ELLIS
United States District Judge