**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 17-CR-297 |
| | ) | |
| | ) | Judge Sara L. Ellis |
| BEENA PATEL. | ) | |

**DEFENDANT BEENA PATEL'S SENTENCING POSITION PAPER**

NOW COMES the Defendant, BEENA PATEL, by and through her attorneys, ANGELINI, ORI + ABATE LAW, and in support of her Sentencing Position Paper, states as follows:

**I.  Introduction**

On April 26, 2019, the defendant, Beena Patel, was convicted after a trial by a jury of three counts of perjury. In *Count One*, Beena Patel was convicted of lying to the grand jury about whether she either (a) knew whether Sivasubrami Rajaram ("Rajaram") had spoken to law enforcement, (b) that Rajaram had testified before the grand jury or (c) that Beena Patel had spoken to Rajaram after he received a Grand Jury subpoena. As in every Count, the jury was not required to convict Beena Patel of all of the alleged false statements in each count. A unanimous decision on any perjured statement was sufficient. In *Count Two,* Beena Patel was convicted of lying to the grand jury about whether she had sold tickets for *Friends of Dorothy Brown* fundraisers or that Beena Patel knew that other employees of the Cook County Clerk's office sold tickets to and collected money for the fundraisers. In *Count Three,* Beena Patel was convicted of lying to the grand jury about whether she asked Dorothy Brown's Chief of Staff to help an individual obtain a promotion or whether Beena Patel knew that this individual had received a "merit raise."

**II.     Corrections in the PSR**

The defendant, Beena Patel, commends the complete and thorough examination of her life, the crime she committed, her potential sentence and the sentencing recommendation that was given by United States Probation Officer, Rebecca Fowlie.  There are a few minor corrections to the Pre-Sentence Report that Beena Patel would like to offer, none of which are material to her sentence.

**Page 6 paragraph 11**   There is an indication that Mr. Rajaram was convicted of perjury, where in fact he actually pleaded guilty to the charge of perjury and was sentenced to probation for his crimes.

**Page 6 paragraph 12**   In the sentence, "Upon Dorothy Brown's arrival, the defendant asked for a position with the Clerk's office and Ms. Brown reportedly….", it implies that Beena Patel asked for the position.

The sentence should read,  Upon Dorothy Brown's arrival, Mr. Rajaram asked for a position with the Clerk's office and Ms. Brown reportedly…."

**Page 7 paragraph 14**   The sentence reads, "….Pinal Patel's (Individual D) brother paid a bribe in exchange for Pinal Patel's promotion…."  It should read "….Pinal Patel's (Individual D) brother paid a bribe in exchange for Pinal Patel's brother's wife's promotion…."

**Page 11 paragraph 55**   There is a misspelling.  The city in India, "Dalod" should be "Talod."

**III.     Objections to the Offense Level Computation in the PSR**

Primarily, the United States Probation Department's Offense Level Computation was addressed in the PSR in pages 8 through 10.

|     |     |     |
| --- | --- | --- |
| **A.** | **Base Offense Level     (18 U.S.C. Sec. 1623 (a)** | **14** |

The Defendant agrees with the Base Offense Level of 14.

**B**.     **Specific Offense Characteristics**

**(Substantial Interference Enhancement under USSG Sec. 2J1.3(b)(2))          3**

The Defendant disagrees with the three (3) level enhancement for the "substantial interference with the administration of justice."

Primarily, the Defendant, Beena Patel, is in no way attempting to minimize her perjured testimony or the effect of that perjured testimony. The crime of perjury is a serious Class D felony. In this section, Beena Patel is merely setting forth that there is **no stated factual basis** in either the *Government's Version of the Offense* or information provided by the investigating agencies, to support the conclusion that the specific crimes for which Beena Patel was convicted resulted in a "substantial interference with the administration of justice."

The United States Probation Department has determined that Beena Patel's false statements before the Grand Jury resulted in a "substantial interference with the administration of justice." According to the Pre-Sentence Report, Beena Patel's lies "affected the government's ability to file charges against Dorothy Brown." In that vein, according to the PSR, a three (3) level enhancement applies under USSG Sec. 2J1.3(b)(2). From a reading of the PSR, it appears that the probation officer found her support for the conclusion that Beena Patel's conduct "affected the government's ability to file charges against Dorothy Brown" from the *Government's Version of the Offense* and information provided by Agent Harris,

"….The government opined that her testimony was "so misleading and had contradicted herself in so many respects that it was difficult for the Grand Jury to credit anything she said. Agent Harris advised that the defendant and Mr. Rajaram's lies before the Grand Jury and convictions for such prevented the FBI from moving forward with their investigation of Dorothy Brown."

In its *Version of the Offense*, the Government opined that because Beena Patel's perjury, "…resulted in substantial interference with the administration of justice (the government's ability to prosecute Dorothy Brown for acceptance (sic) a $15,000.00 bribe paid by Rajaram), the offense is subject to an increase of 3 levels."

While the opinions within the *Government's Version of the Offense* and the information provided by Agent Harris are consistent, they are both conclusory as to what effect Beena Patel's testimony had upon the Government's ability to indict Dorothy Brown. Ironically, as an attachment to their *Version of the Offense*, the Government provided the factual basis of the type of information that could have brought about an indictment of Dorothy Brown, when it attached the proffered statement of Sivasubrami Rajaram (taken on November 14, 2015). In that statement, Rajaram provided a detailed description of the "bribe" and his payments to Dorothy Brown. Through this proffered statement, the Government provides a factually detailed account of the $15,000.00 "bribe." According to Rajaram, while he was signing for promissory notes with Dorothy Brown, Rajaram's understanding was that he was providing the money to obtain a job. Rajaram felt that he would not obtain employment without paying the money.

It is for the Government to prove at sentencing that Beena Patel's perjured Grand Jury testimony had a "substantial effect" in making Sivasubrami Rajaram's proffer or his prospective testimony against Dorothy Brown less credible than it would have been but for defendant's perjured testimony. For example, how did the Government's job become substantially more difficult in indicting and eventually convicting Dorothy Brown if Beena Patel lied to the grand jury about whether she knew whether Sivasubrami Rajaram had spoken to law enforcement (Count One)? Or about Beena's knowledge as to whether Sivasubrami Rajaram had testified before the grand jury (Count One)?

Similarly in *Count Two,* there is no stated nexus between Beena Patel's conviction for lying to the grand jury about whether she had sold tickets for *Friends of Dorothy Brown* fundraisers and the Government's inability indict and eventually convict Dorothy Brown. In all candor, there has been no showing that having Beena Patel sell fundraising tickets for *Friends of Dorothy Brown* is

even an indictable offense. Again, Beena Patel is not minimizing her lies or the significance of the lies; she is merely questioning the causal effect of whether those lies substantially made it more difficult for the Government to indict Dorothy Brown, especially in light of the fact that Rajaram seemed to be more than willing to offer damaging testimony against Dorothy regarding his own payments to Brown.

In *Count Three,* Beena Patel was convicted of lying to the grand jury about whether she asked Dorothy Brown's Chief of Staff to help an individual obtain a promotion and whether Beena Patel knew that this individual had received a "merit raise." Again, in neither the *Government's Version of the Offense* nor in Agent Harris' summation to the United States Probation Department, is there a stated nexus between Beena Patel's perjured testimony and any indictable act, which could have been pleaded against Dorothy Brown relating to this perjured testimony.

### C. Multiple Count Adjustment (Section USSG Sec. 3D1.4) 2

The Defendant disagrees that a Multiple Count Adjustment is proper in this case.

The United States Probation Officer details her support for the application of a USSG Sec. 3D1.4 Multiple Count Adjustment in paragraphs 23 and 24 on page 8 of the Pre-Sentence Report:

"….23.   Counts 1 and 2 are grouped for guideline calculation purposes because they involve the same victim and two or more transactions connected by a common criminal objective or constituting part of a common scheme or plan.  USSG Sec. 3D1.2;

24.    It is noted that Count 3 is not grouped with Counts 1 and 2 because in cases involving perjury arising from testimony given in separate proceedings, the counts are not grouped. USSG Se.2J1.3(d)(1).  The false statements involved in Counts 1 and 2 occurred at the same Grand Jury session on October 15, 2015, whereas the false statements involved in Count 3 occurred at a different Grand Jury session on July 14, 2016."

According to the above analysis, merely because Beena Patel's perjured testimony before the grand jury occurred on separate dates, a Multiple Count enhancement under USSG Sec. 3D1.4(a), (b) and (c) is warranted.

Primarily, the United States Probation mistakenly applied USSG Sec. 2J1.3(d)(1), which states:

"….(d)   Special Instruction

(1)   In the case of counts of perjury or subornation of perjury arising from testimony given, or to be given in separate proceedings, do not group the counts together under Sec. 3D1.2 (Groups of Closely Related Counts).

The United States Probation office determined that Beena Patel's testimony to the same grand jury on the same case, sitting on different dates, constituted "separate proceedings" under USSG Sec. 2J1.3(d)(1).   The *Application Notes to USSG Sec. 2J1.3*, however, specifically define "separate proceedings":

"…Separate proceedings, as used in subsection (d)(1), includes different proceedings in the same case or matter (e.g. a grand jury proceeding and a trial, or a trial and retrial) and proceedings in separate cases or matters (e.g. separate trials of codefendants) **but does not include multiple grand jury proceedings in the same case**."

Count III should not be grouped separately from Counts I and II, and the 3D1.4 Multiple Count Adjustment is improper in this particular instance.

### D.   Offense Level Computation

The Defendant asserts that the Adjusted Offense Level of fourteen (14) is proper, because: (a) there is no stated factual basis for a "substantial interference with the administration of justice" enhancement under USSG Sec. 2J1.3(b)(2) and (b) a multiple count adjustment is not proper under USSG Sec. 2J1.3(d)(1) or USSG Sec. 3D1.4.

The resulting Guideline Range at an Adjusted Offense Level of fourteen (14) is 15-21 months.

### IV.   A sentence of probation is an option that is available to the Court

*Statutorily*:

Because the offense in question is a Class D felony, under 18 U.S.C. Sec. 3561(c)(1), the defendant is eligible for not less than one (1) year but not more than five (5) years of probation as an option on each count. One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution or community service.

*Guidelines:*

Whether the Adjusted Offense Level falls within the Government's suggested offense level (17), the Defendant's suggested offense level (14) or the United States Probation Officer's suggested offense level (19), all of the levels fall within Zone D. For the purpose of a purely advisory guideline calculation, probation would not be available.

**V.     A sentence of three (3) years of probation is an appropriate sentence in this case.**

If the court were inclined to sentence Beena Patel to a non-custodial sentence of probation for any length of time, the court would have to find that a sentence below the advisory guideline range is an appropriate sentence.

Under §3553(a), the district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" laid out in that statute. To ascertain such a sentence, the courts are directed to consider certain relevant factors, including (1) the nature and circumstances of the offense, (2) the history and characteristic of the offender, (3) the need to provide the defendant with needed medical care in the most effective manner, (4) the need to provide just punishment for the offense, (5) the need to afford adequate deterrence, and (6) the need to protect the public from further crimes of the defendant. 18 U.S.C. §3553(a). The court must assess defendant's personal characteristics aside from the offense conduct. 18 U.S.C. §3553(a)(1).

> *(1)     The nature and circumstances of the offense and the need to provide just punishment for the offense*

Perjury is a Class D felony, and it is a serious offense. It is an offense, however, that, at least statutorily, contemplates that a sentence of probation may be available for the crime(s) committed. Beena Patel is fearful that at least from a review of the *Government's Version of the Offense*, that her sentencing hearing from the Governments' perspective could turn into a comment on public corruption. Beena Patel broke her oath to tell the truth before a grand jury. That oath is identical to an oath that would have been given to her whether she was a public servant or not. While there was not a single jury instruction, which was submitted to the jury, that referenced whether Beena Patel was a public servant, an assistant circuit court clerk or a friend of Dorothy Brown, Beena Patel appreciates and understands the Government's position that her lies could have seriously affected an investigation into public corruption. And while that is a reality for Beena Patel, she continues to believe and assert that a period of incarceration would be greater than necessary to carry out the directives of 18 USC Sec. 3553(a).

Although it is necessary for the court to provide the appropriate message to the public at large about the sacred aspect of the oath to tell the truth, it is also important to recognize that the court is sentencing a person. As described below, Beena Patel's background, advanced age, community work, and family situation all mitigate strongly in favor of the Court imposing a probationary sentence that, while still recognizing the seriousness of the overall offense, will appropriately account for those other important factors.

With or without receiving a sentence that includes a period of incarceration, the seriousness of this offense is particularly destructive for Beena Patel, because the felony conviction will undoubtedly affect Beena Patel's ability to realize her pension. This is a debilitating circumstance of the crime for which Beena was convicted.

One of the great benefits of working almost thirty (30) years in the same clerk's office is that Beena Patel could enjoy the fruits of the pension that she paid into for almost thirty (30) years, and began to realize on her retirement on August 31, 2016. As a fifty-eight (58) year old female, Beena Patel has the natural life expectancy of an additional 26.8 years. If Beena Patel reached her natural life expectancy, Beena's pension would have realized over two million ($2,000,000.00) dollars over her natural lifetime.

On September 30, 2019, Beena Patel received a notice from the *Cook County Pension Fund*, that due to her conviction under Counts I, II and III (all felonies), the County's Retirement Board would be holding a hearing to determine whether the facts that gave rise to Beena Patel's felony convictions related to Beena's service with Cook County. The hearing was set for November 7, 2019. Over the past several weeks, attorney Donald J. Angelini, Jr. has been in contact with Margaret M. Fahrenbach, Esq. the attorney for the *Cook County Pension Fund*. It was agreed that since this was an issue that did not require an evidentiary hearing (Beena's pension was being suspended and eventually revoked due to a conviction), Beena Patel would submit her position in writing to be presented before the *Cook County Pension Fund Board*. (See attached as Exhibit "A")

The statutory language, which adjudicates Beena Patel's rights to her pension, is found in the *Illinois Pension Code*, 40 ILCS 5/9-235:

".... Felony Conviction. None of the benefits provided in the Article shall be paid to any person who is convicted of any felony **relating to** or **arising out of** or **in connection with his service as an employee**."

The language, "relating to or arising out of or in connection with his service as an employee" is broad and potentially devastating to any attempt that Beena Patel would have in saving her pension. According to Ms. Fahrenbach, it will be the position of the Pension Board

that the convictions "related or arose out" of Beena Patel's employment and that Beena's pension is suspended following November 7, 2019, no matter what Ms. Patel or her attorneys present by way of legal argument. Beena Patel's last $7,287.00 monthly pension benefit was paid on November 1, 2019. While this financial loss is a collateral loss for the crime which Beena Patel committed, there is no question that Beena Patel has and will continue to suffer from the consequences of her actions in submitting false testimony to a grand jury, with or without serving a period of incarceration.

   (2)  *The history and characteristics of the defendant*

Beena Patel was born in 1961 in Talod, Gujarat, India to Ashabhai and Sumitra Patel. Beena's father died when she was just six (6) years old. Beena was one of six (6) children, four (4) of which, including herself, are alive. She maintains a good relationship with each one of her siblings. Beena was primarily raised by her mother, living in Ahmedabad, India, until she was five (5) years old, and then living in Nar, India, until she was eighteen (18) years old. Beena and her mother were financially supported by Beena's uncles growing up.

As stated in the Pre-Sentence Report, Beena's faith has always been very prominent in her life. During her childhood, approximately twenty women would visit Beena's home every night for a religious meeting and reading. Beena would perform devotional songs on religious holidays for this group. Beena's mother played a vital role in her spiritual and religious upbringing. Currently, Beena visits her temple on Sundays and serves in its cafeteria as a way of giving back to her community.

Education was also very important to Beena. She diligently studied in order to be the top student in her class and received the *charitable fund* for girls in her school. When Beena was awarded money for being at the top of her class, she gave the earnings to her mother. Beena

graduated first in her class at Nar High School. Beena attended a nearby college, Nadiad Commerce College, and lived with her maternal uncle for the duration of her college education. Beena transferred from this college after one year, and then attended Navgujarat College where she received her bachelor's degree in commerce, accounting, and auditing. Beena has always worked hard for her family and volunteered continuously for her community. Even at a young age, Beena helped elderly women in her community, for which she received payments in fruits. Following college, Beena Patel worked within the banking system.

Beena married her husband, Dixit Patel, an arranged marriage, on February 23, 1984 in Ahmedabad, India. They lived many months apart, until Beena obtained a Visa and reunited with her husband in Chicago, Illinois, approximately fifteen (15) months after their marriage. While Beena and her husband were part of an arranged marriage, Dixit Patel is the love of Beena's life. Dixit Patel has shown Beena Patel constant support and love throughout this criminal process.

Once Beena arrived in the United States, she continued her education by enrolling in classes at Truman College. While in school, she also worked as a typing lab instructor. More recently, Beena completed an online course about the foundations of being a teacher.

Beena is a mother. ████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████

For the first fifty-five (55) years of her life, Beena Patel had never been arrested or accused of any crime. Beena Patel has always maintained full-time employment, and has always worked to provide for her family. Beena Patel has worked to support herself, her husband, their son, her in-laws and until recently, her mother (now deceased) in her home at 6246 North Leona Avenue, Chicago, Illinois 60646. While many individuals have either cared for or provided a home for (a)

their in-laws or (b) their own parents for extended periods of time, few have provided a home for both.

For over 20 years, Beena was providing a home and constant support for both her mother, and her in-laws, who are both over the age of 80. If Beena is incarcerated, it would provide a substantial burden for the Patel family in attempting to provide care for Beena's in-laws who have historically heavily relied upon Beena for their care, financial support and treatment. Not only has Beena cared for her own family and her husband's family, but countless letters speak to Beena's contributions to her friend's parents when they were in poor health.

Beena Patel, having become discontent with retirement, is currently working at *Best Brains Buffalo Grove*, which is an after school learning center. *Best Brains Buffalo Grove* helps students achieve better grades through building their confidence. Beena has dedicated much of her time to *Best Brains Buffalo Grove*, and has made numerous friendships there.

Beena is a prevalent force in the Indian community, especially with those who emigrated from the region of Gurat, India. Throughout the years, Beena has worked with countless organizations and held positions on many boards. Some of the volunteer work she has undertaken is through the *Metropolitan Asian Family Services* (MAFS), *Association of Indian Americans* (AIA), the *Gujarati Samaj*, BAPS, *Freedom from Hunger*.

It is typical for the court to receive letters of character from the friends and family in relation to the sentencing of any defendant. In this case, the Defendant is submitting thirty-seven (37) letters from her family members and friends. In a very real manner, the defendant is described as the matriarch and guidance of a great family. She is looked upon as a "mother figure" and a leader to everyone within her community. There are a number of letters and newspaper clippings that illustrate the community work that defendant has engaged in over the years. The

aforementioned letters and newspaper clippings are attached as *Exhibit "B" and Exhibit "C", respectively*. Beena's acts of kindness in the community are boundless.

A highlight of some of the letters of character are as follows:

### *Dixit Patel*

Dixit Patel is Beena's husband of 34 years. He describes Beena's upbringing and her hard work to accomplish her education, and then describes her promotions through the Clerk of the Circuit Court. Mr. Patel describes Beena as her mother and his parents' life lines. Mr. Patel cannot remember a single person that Beena has declined to help. He is proud of his wife for taking pride and satisfaction in helping and making a difference in someone's life.

### *Ashish D. Patel*

Ashish Patel is Beena's son. He states that his mother has done her best to ensure that anyone in their community stayed out of hardship and poverty. She uses her privilege to help others. Beena has been a supportive and positive influence throughout her son's life. Beena's son says that his mother has never been one to ignore responsibilities, and is more than willing to face the consequences of her actions. Finally, Beena's son believes his mother will leave a lasting impact on the world for good and that whatever lies ahead of her will motivate her to be a moral and supportive person.

### *Ghanshyam N. Pandey, Ph.D.*

Dr. Ghanshyam N. Pandey is the Chairman of the Board of Trustees of the Association of Indians in America (AIA), Illinois Chapter. Dr. Pandey describes Beena's involvement in AIA as the Vice President and President, and stated that Beena brought a lot of energy and assets to the organization. Dr. Pandey described Beena as a pleasant person who is committed to volunteer for the community, and would offer to help with any personal need.

### *Jitendra Punjabi*

Jitendra Punjabi is a retired Cook County employee. He describes Beena taking care of three (3) senior citizens within her home, even while going through a difficult time of her own. Mr. Punjabi further describes Beena as a warmhearted and genuine leader and volunteer.

### *Sowmya Sounderrajan*

Sowmya Sounderrajan is one of Beena's coworkers at Best Brains Learning Center. She describes Beena as dependable, calm, and collected, even under stressful situations.

*Sonal Patel, M.D.*

Doctor Sonal Patel has known Beena for over 20 years in many different capacities. Dr. Patel describes Beena as someone who provides great humanitarian services with a pleasant and friendly personality and positive attitude. Dr. Patel further describes Beena as someone who takes pride in helping people in need and whose only reward she receives is the satisfaction that she receives from putting a smile on people's faces. Dr. Patel speaks about all of the senior citizens that Beena has helped, including Dr. Patel's father-in-law, and especially Beena's own mother and her in-laws. Finally, Dr. Patel describes Beena as a loyal employee and someone who gives 100% when she is given any responsibility.

*Neelam Ganger*

Neelam Ganger has been friends with Beena for the last fifteen years. Ms. Ganger describes Beena as someone that has been there for her in countless ways over the course of their friendship. Ms. Ganger states that Beena is remorseful, but that she is already paying for her actions as she has lost her credentials within their community. Ms. Ganger believes their community will be at a loss without Beena.

*Paulomi Shukla*

Paulomi Shukla is Beena's first cousin. Paulomi Shukla describes Beena as someone that both her family members and friends look up to for her work ethic, honesty, and dedication. Paulomi Shukla also describes Beena as someone who is always there for everyone without any kind of expectation in return. Finally, she states that Beena's contribution to the Indian community is remarkable: she will go above and beyond to make sure anyone is helped.

*Praful Patel*

Praful Patel is Beena's aunt. Ms. Patel describes Beena as fair, selfless, and compassionate. She describes the way in which Beena takes care of her mother and in-laws, and how all three seniors are happy, healthy, and well taken care of.

*Pallavi Patel*

Pallavi Patel is one of Beena's friends. Ms. Patel described a situation where Ms. Patel was diagnosed with breast cancer and was very depressed after her mastectomy. Beena went to visit her in her home, and told her they were going to celebrate Ms. Patel's life. Ms. Patel said that Beena took her out to lunch and pulled her out of a serious depression. Ms. Patel considers it her privilege to have Beena as a friend.

*Suchana Chatterjee*

Suchana Chatterjee is one of Beena's recent coworkers. Ms. Chatterjee describes Beena's selfless acts, including that when Beena found out that Ms. Chatterjee that she was unable to get to her job, Beena started to pick her up and drive her to work every day. Beena still drives Ms. Chatterjee

to work every day. Beena also inspired Ms. Chatterjee to further her education and take a class with her. Ms. Chatterjee describes Beena as inspiring, and that there is no barrier of age, social status, or position with Beena.

### *Suresha Patel*

Suresha Patel is the wife of Beena's late cousin. Ms. Patel describes Beena as someone who speaks respectfully to all, youn and old, and is loved by every member of their family regardless of age. Ms. Patel's husband died in 1991, and Beena has upheld every tradition that a sister would take care of in Ms. Patel's family. Ms. Patel describes Beena as a gentle, well-spoken, educated woman. Finally, Ms. Patel talks about all of the ways that Beena has influenced her family traditions and celebrations. Beena has made their occasions special, whereas everyone else had just followed the same routine in a mundane way.

### *Ruchi Saxena*

Ruchi Saxena is Beena Patel's current boss at Best Brains Buffalo Grove. Ms. Saxena describes Beena as going above-and-beyond in managing daily operations, and more than just a team member to every person at work. Beena is like a guide, an elder sister, and a family friend to everyone at work.

### *Ambassador Ashok Kumar Attri*

Ambassador Ashok Kumor Attri was the Consul General of India in Chicago who knows Beena because of her diverse services to the Indian American community. Beena has been an active part in various not-for-profit social services and charitable organizations including: Metropolitan Asian Family Services (MAFS), Association of Indian Americans (AIA), the Gujarati Samaj, BAPS, Freedom from Hunger, and others. Ambassador Attri describes Beena as cheerful, keen, and an enthusiastic member of the society to which she contributed. Ambassador Attri describes Beena as someone he could never believe would do anything against the law to obtain any personal benefit, and assures this Court that if she committed any mistake, it is because she has a simple, trusting, and sincere nature.

(3) the need to afford adequate deterrence and the need to protect the public from further crimes of the defendant.

There exists a certain synergy between: (a) the characteristics of the defendant and (b) the need to afford adequate deterrence and the need to protect the public from the further crimes of the defendant. Defendant is in concert with the United States Probation Department who evaluated the issues of "need for adequate deterrence" and the "need to protect the public from further crimes." Based upon all of the information that was provided to and gathered by the United States

Probation Department, the letters of character that were submitted in Beena's behalf, Beena's age, educational background, lack of criminal background and community involvement, these two factors concerning "deterrence" and "need to protect" may weigh the most heavily in favor of Beena Patel in a determination of whether to impose a below the guideline range sentence.

### VI.     Conclusion

For reasons stated above, Defendant, Beena Patel, prays this Court to consider the imposition of a sentence that does not include a period of incarceration. More specifically, Beena Patel prays that this court impose a sentence of three (3) years probation with a fine of $10,000.00.

Date: Tuesday, November 5, 2019                          Respectfully Submitted,

                                                          By:  */s/ Donald J. Angelini, Jr.*
                                                               Attorney for Beena Patel

Donald J. Angelini, Jr.
ANGELINI, ORI + ABATE LAW
155 N. Michigan Avenue, Suite 400
Chicago, Illinois 60601
(312)621-0000
dangelini@aoalawoffice.com     Atty. No. 6194334